UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Debora A. Smallidge</u>,
    Claimant

    v.                                  Case No. 13-cv-80-SM
                                           Opinion No. 2014 DNH 043

<u>Carolyn W. Colvin, Acting Commissioner</u>,
<u>Social Security Administration</u>,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Debora Smallidge, moves to reverse or vacate the Commissioner's decision denying her applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c (collectively, the "Act"). The Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

In late 2009 and early 2010, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that she had been unable to work since November 14, 2008.  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In July of 2011, claimant, her attorney, and a vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Three weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

In January of 2013, the Appeals Council denied claimant's request for review, rendering the ALJ's denial of claimant's applications for benefits the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8).  In response, the Commissioner filed a "Motion

for an Order Affirming the Decision of the Commissioner" (document no. 11). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than

a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairments prevent her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform her previous

work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

### Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: November 14, 2008. Admin. Rec. at 21. Next, he concluded that claimant suffers from the following severe impairments: "polyarthralgia, polycythemia, chronic obstructive pulmonary disease, obesity, and major depressive disorder." Id. at 21-22. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Id. at 22-23.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of

6

light work.[1]  He noted, however, that claimant does have certain limitations.

> She should never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She should avoid exposure to respiratory heights and moderate exposure to respiratory irritants and concentrated exposure to extreme temperatures, wetness and humidity. [Despite] her mental health condition, she is capable of understanding and remembering instructions and can effectively perform routine tasks; she can maintain normal concentration for two-hour periods within a normal eight-hour workday; she retains adequate capacity to sustain a normal workday and workweek; she is capable of appropriate social interaction with the public, supervisors and coworkers; and she is capable of adapting to normal changes within a work environment.

Admin. Rec. at 24.  Despite those restrictions, the ALJ concluded that claimant was capable of returning to her prior job as a cashier and, therefore, was not disabled.  Id. at 27-28.

---

[1] "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

In the alternative, the ALJ proceeded to step five of the sequential analysis and considered whether there were any other jobs in the national economy that claimant might perform. Relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 29. Consequently, at both steps four and five, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act.

**Discussion**

Claimant challenges the ALJ's decision on two grounds, asserting that he erred: (1) by improperly determining her residual functional capacity; and (2) by failing to give adequate weight to the opinion of a psychological consultant who evaluated her.

I. <u>Claimant's Residual Functional Capacity</u>.

Claimant challenges the ALJ's determination that she was capable of performing a range of light work, asserting that he improperly assigned greater weight to the physical RFC assessment of Dr. Fairley (a non-examining state agency physician) than to the June 2011 Physical RFC Questionnaire completed by Mr. Cubeddu

(a physician's assistant who treated claimant since June of 2008). The court disagrees.

In June of 2011, Mr. Cubeddu completed a Residual Functional Capacity Questionnaire in which he opined that claimant had a less than sedentary RFC. Admin. Rec. at 444-48. Dr. Brian Irwin co-signed that questionnaire. Id. at 448. Claimant suggests that the opinions in that questionnaire were entitled to substantial deference (if not controlling weight) because they represent the professional medical judgment of her treating source, Dr. Irwin. See generally 20 C.F.R. § 404.1527(c). But, as the Commissioner points out, it is difficult to view Dr. Irwin as a "treating source" (at least as that phrase is used in the regulations), since he only met with claimant on a single occasion - June 10, 2008. See generally 20 C.F.R. § 404.1502. Although Mr. Cubeddu had a substantial treatment history with claimant (they met on ten occasions between June of 2008 and June of 2011), the record does not support the conclusion (or even the inference) that Dr. Irwin shared Mr. Cubeddu's level of familiarity with claimant and her impairments.

Even if Dr. Irwin were properly viewed as claimant's "treating source," his opinions about claimant's level of functioning in June of 2011 (as expressed in the RFC

9

Questionnaire prepared by Mr. Cubeddu) were rendered three years after he examined her.  Consequently, they have little persuasive value.[2]  The ALJ did not err in treating the opinions contained in that RFC Questionnaire as coming from something other than an acceptable medical source.  Admin. Rec. at 27.

Alternatively, claimant asserts that even if Mr. Cubeddu's opinions were not entitled controlling weight, the ALJ should have afforded them more weight than those of the state agency physician.  But, the ALJ supportably explained why he chose to discount Mr. Cubeddu's opinions.

> Although his opinions may be used as evidence to assess the severity of the claimant's impairments, and how they affect her ability to work, [Mr. Cubeddu's] finding[s] are not supported by the evidentiary record as a whole.  Although his last encounter with the claimant was in June 2011, he had not seen her in the preceding fifteen months since March 2010, when she was doing "worlds better."  Mr. Cubeddu's findings are not supported by treatment notes documenting objective medical findings to substantiate such limitations.

Admin. Rec. at 27 (citations omitted).  Mr. Cubeddu's treatment notes from that office visit in March of 2010 reveal that

---

[2] For example, when Dr. Irwin examined claimant in June of 2008, she did not report any symptoms of depression.  Admin. Rec. at 346.  Yet, three years later, the Residual Functional Capacity Questionnaire co-signed by Dr. Irwin endorses the view that claimant's depression and other psychological issues have rendered her incapable of substantial gainful activity.  Id. at 445.

claimant did not report any physical symptoms, and state that she "reports that she is feeling much better with the Pristiq, worlds better actually. She feels as though it is really helping." Admin. Rec. at 334.

Claimant explains that she failed to seek treatment with Mr. Cubeddu for several months because of a lapse in insurance coverage. But, as the Commissioner notes, "the fact remains that Mr. Cubeddu relied upon a disjointed, temporally remote body of evidence to support his assessment of Plaintiff's functional capacity." Commissioner's memorandum (document no. 11-1) at 6. And, prior to each lengthy break in treatment, claimant reported feeling significantly better. Regardless of the status of claimant's insurance coverage, the ALJ was permitted to infer that at least one reason she did not seek treatment during those lengthy periods of time was because she was actually responding well to her medications. As the Court of Appeals for the Eight Circuit has noted, "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993). Cf. 20 C.F.R. §§ 404.1530(a) and 416.930(a) (providing that a claimant's failure to follow a prescribed treatment regimen is grounds for denying an application for benefits).

Finally, claimant asserts that, contrary to the ALJ's finding, Mr. Cubeddu's opinions are supported by the opinions and recommendations of claimant's other treating sources. For example, she points to visits she made to Tonya Perrino (a physician's assistant) (Admin. Rec. at 214), Dr. Friedlander (an oncologist/hematologist) (Admin. Rec. at 209-10), and Dr. DeLong (a pulmonary specialist) (Admin. Rec. at 202-04). But, none of the treatment notes from any of those care providers supports Mr. Cubeddu's opinion that claimant is completely disabled from performing any substantial gainful activity. Rather, those treatment notes seem focused primarily on claimant's polycythemia and hypoxemia, secondary to her cigarette smoking.[3]

Claimant also asserts that the ALJ should have placed less weight on Dr. Fairley's opinions because, when he prepared his report, he did not have the benefit of Mr. Cubeddu's June, 2011, progress notes. But, aside from an unsupported diagnosis of

---

[3] For example, Dr. Friedlander specifically noted that claimant's lab results and hypoxemia were much improved with claimant's decreased smoking. Admin. Rec. at 209 ("I have arranged for a repeat erythropoietin level and assume this will be higher. Assuming that is the case, then there is no need for further hematologic follow up, as correction of her hypoxemia and decreasing cigarette smoking are the ways to control her plasma volume and secondary polycythemia.").

fibromyalgia, those notes provide little, if any, new information about claimant's condition.[4]

Finally, the court notes that Dr. Fairley's opinions are well-supported by specific references to substantial evidence in the record. See Admin. Rec. at 410. And, the ALJ supportably explained his decision to afford greater weight to Dr. Fairley's opinions than those of Mr. Cubeddu. See 20 C.F.R. § 404.1527(c)(3)-(4) (stating that the more weight will be afforded to opinions that are supported by medical signs and laboratory findings, as well as those opinions that are consistent with the medical record as a whole). See generally SSR 96-6p, 1996 WL 374180 at *2 (noting that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act" and "[i]n appropriate circumstances,

---

[4] Although Mr. Cubeddu diagnosed claimant with fibromyalgia, he did not record any clinical findings to support that diagnosis. See Admin. Rec. at 442. See generally Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2009) (noting that while laboratory results and musculoskeletal and neurological examinations typically show no abnormalities for fibromyalgia patients, the American College of Rheumatology "nonetheless has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, and point tenderness in at least 11 of 18 specified sites.") (citations and internal punctuation omitted). There is no record in Mr. Cubeddu's treatment notes that he subjected claimant to that test, or that she reported tenderness in at least 11 of 18 specified sites. Consequently, his diagnosis of fibromyalgia cannot be said to be well supported by the medical record.

opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

II. <u>Claimant's Mental Impairments</u>.

Next, claimant challenges the ALJ's decision to afford greater weight to a Psychiatric Review Technique and the Mental Residual Functional Capacity Assessment prepared by the state agency psychological consultant, Helen Patterson, Ph.D. (Admin. Rec. at 416-33), than the Mental Health Evaluation Report prepared by psychological consultant Cheryl Bildner, Ph.D. (<u>id</u>. at 411-15).

In her report, Dr. Bildner observed that claimant is "predominantly able to independently complete [activities of daily living]. She described that on certain days, she is unable to complete certain tasks due to pain and fatigue, but tasks are eventually completed. She shops, maintains her home, hygiene and cooks. She can drive but does not have a vehicle." Admin. Rec. at 413. She also observed that, "Claimant is able to recall basic information. She can understand and remember locations and work-like procedures. She would have difficulty recalling more complex, detailed or abstract instructions." <u>Id</u>. at 414. Additionally, she opined that claimant "can make simple

14

decisions.  She is able to interact appropriately with superiors or co-workers."  Id.  Nevertheless, Dr. Bildner concluded that, "Claimant is unable to sustain concentration and complete tasks.  Motivation and perseverance are compromised" and claimant is "unable to maintain a consistent schedule [and] she is unable to effectively manage stresses common to a work environment."  Id.  Claimant focuses on those latter conclusions and says the ALJ inappropriately discounted them.

Dr. Patterson, on the other hand, opined that while claimant does have some limitations, she is capable of engaging in substantial gainful activity.

> [Claimant] alleges multiple physical conditions including fibromyalgia and fatigue with depression.
>
> MER [medical evidence of record] shows multiple problems associated with chronic nicotine dependence, including mild COPD.  Has been worked up extensively and recently directly warned that if she does not stop smoking, she has increased likelihood of shortened life.
>
> Close read[ing] of the record raise[s] questions regarding alcohol abuse, despite claimant denying this or minimizing.
>
> MER further reveals multiple situational stressors, including caring for an ill spouse, with both of them unemployed.  [Her activities of daily living are those] of a homemaker.
>
> No history of psychiatric treatment or any other form of mental health care, [which] is a weighted factor.  PCP notes do show a few months' period of focus re:

15

> depression, during time of MD focus on this claimant stopped smoking.
>
> CE [consultative examination] necessary. Presented as somewhat vague informant. Raspy voice. Single objective sign of depression per restricted affect. No signs of thought disorder. Some "preoccupation" with health issues. IQ estimated as average. Reduced attention and motivation. Diagnosis of [major depressive disorder], recurrent, moderate.
>
> CE provider's estimation of [claimant's] limitations seems extreme in the face of the record. Task complexity is reduced to "simple," [while] this claimant routinely performs normal tasks. Appears the provider does not understand programmatic definitions of "simple" and "complex."
>
> Job reported to have ended due to variety of physical ailments. Hasn't been referred for psychiatric evaluation or treatment, nor sought same.

Admin. Rec. at 428. In light of the foregoing, Dr. Patterson concluded that, "Overall, this claimant may have some reduction in sustainability but overall is capable of work-like activity." Id.

Claimant takes issue with Dr. Patterson's statement that she has "no history of psychiatric treatment or any other form of mental health care." And, she goes on to suggest that because Dr. Patterson stated (allegedly erroneously) that claimant had not "been referred for a psychiatric evaluation or treatment, nor sought [the] same," Admin. Rec. at 428, she "did not review the records carefully." Claimant's memorandum at 22. But, as the Commissioner points out, there is a difference between

16

"referring" a patient for treatment by a medical or mental health specialist, and "suggesting" the same. Whenever Mr. Cubeddu specifically "referred" claimant to a specialist, it appears she followed up with a consultation. As to mental health counseling, however, Mr. Cubeddu simply suggested that she seek counseling or therapy. It was, therefore, reasonable for Dr. Patterson to infer that, given the absence of evidence that claimant ever sought mental health counseling or treatment (beyond the anti-depression medications prescribed by Mr. Cubeddu), she never received such a "referral" for a psychiatric evaluation or treatment.[5]

In the final section of the functional capacity assessment she completed, Dr. Patterson concluded that:

> The preponderance of evidence indicates:
>
> A.   The claimant is capable of understanding and remembering instructions and can effectively perform routine tasks.
>
> B.   The claimant appears capable of maintaining concentration for two hour periods within a normal 8-hour work day. Although she may experience some interruption from symptoms of depression, she

---

[5]   Parenthetically, the court notes that no one disputes the fact that claimant suffers from depression. In fact, the ALJ concluded that her major depressive disorder is a severe impairment. Admin. Rec. at 21. But, the record certainly suggests that, when properly treated with medication, claimant's depression responded well and she felt "worlds better." Id. at 334.

17

> retains adequate capacity to sustain a normal workday and workweek.
>
> C. The claimant is capable of appropriate social interaction with the public, supervisors, and co-workers.
>
> D. The claimant appears capable of adapting to normal changes within a work environment.

Admin. Rec. at 432. While there is certainly evidence in the record to the contrary, those conclusions are nonetheless supported by substantial record evidence, as is the ALJ's decision to afford them great weight.

## Conclusion

This court's review of the ALJ's decision is both limited and deferential. The court is not empowered to consider claimant's applications de novo, nor may it undertake an independent assessment of whether she is (or is not) disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence, the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health &

Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriquez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

Consequently, while there is certainly substantial evidence in the record demonstrating that claimant experiences significant pain and muscle aches, has difficulty with fatigue, and suffers from depression, the existence of such evidence is not sufficient to undermine the ALJ's decision that she is not "disabled" within the meaning of the Act, which conclusion is also supported by substantial evidence.

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time between November 14, 2008, and July 28, 2011. The ALJ's RFC determination, his decision to discount the opinions of Mr. Cubeddu, and his decision to afford greater weight to the opinions of Dr. Patterson than those of Dr. Bildner are well-reasoned and well-supported by substantial documentary evidence.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 8) is denied, and the

Commissioner's motion to affirm her decision (document no. 11) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 28, 2014

cc: D. Lance Tillinghast, Esq.
    T. David Plourde, Esq.